AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
#### District of Massachusetts

| | |
|---|---|
| United States of America<br>v.<br>**KEITH WOODS**<br><br>*Defendant(s)* | Case No.<br>18-mj-1370-DLC |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **September 29, 2018** in the county of **Suffolk** in the _____ District of **Massachusetts**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC § 922 (g)(1) | Felon in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

See attached affidavit of ATF Task Force Agent Michael J. Linskey

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Sgt. Det Michael J. Linskey, Task Force Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/26/2018

_____
*Judge's signature*

City and state: Boston, MA

Hon. Donald L. Cabell, U.S. Magistrate Judge
*Printed name and title*

18-mj-1370-DLC

<u>AFFIDAVIT</u>

I, Michael J. Linskey, having been duly sworn, on oath depose and state that:

1. I am a Sgt. Detective with the Boston Police Department, where I have worked for more than 30 years. Since 2010, I have been assigned to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to investigate firearms-related offenses as a Task Force Officer in ATF's Group 2. Since joining ATF, I have investigated federal firearms violations which has included participating in the controlled purchases of firearms, surveillance of firearms traffickers, interviews of suspects, participating in search warrants and complaints, and electronic surveillance.

2. Based on my training and experience, I am aware that Title 18, United States Code, Section 922(g)(1) makes it a federal offense for any individual who has previously been convicted of a felony offense to possess a firearm or ammunition in or affecting interstate commerce. Having so stated, I make this affidavit in support of a criminal complaint charging **KEITH WOODS** with being a felon-in-possession of a firearm and ammunition in violation of that statute.

3. The statements contained in this affidavit are based on my own investigation, work done by other ATF Agents, and on

information provided to me by officers of the Boston Police Department ("BPD"). This affidavit is submitted for the limited purpose of establishing probable cause to believe **WOODS** violated 18 U.S.C. §922(g)(1), and therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

4. The investigation into **WOODS** was initiated at approximately 3:15am on September 29, 2018 when officers responded to a Shotspotter activation in the area of 1111 Harrison Avenue in Roxbury's Dudley Square (believed to be a high-crime neighborhood for firearm-related offenses). While officers were in that area investigating, they saw a Gray Nissan bearing Quebec (Canada) Registration FMJ9753 operating without headlights.

5. Officers immediately conducted a traffic stop of the Nissan in the area of Harrison Avenue and Dudley Street with Lt. Bickerton and Officer Starkey covering the driver's side and Officers Stallings, Smerz, and McCabe on the passenger side. As they approached the car, all but Officer McCabe recognized **WOODS**, knew him to be an identified member of the Vine/Forest Street gang, and were aware that he had an extensive criminal history that include either firearm arrests and/or conviction.

6. Upon approaching the car, the officers advised the driver, Cheri Dobson, why she had been pulled over and asked for

her license and registration. Dobson produced both documents and turned on the lights to show that they were working. **WOODS** was the only other occupant of the car and was sitting in the front passenger seat.

7. Officers Stallings, Smerz, and McCabe approached the passenger side of the Nissan and engaged **WOODS** in conversation. **WOODS** reported that he was out "looking for some bitches," and was observed by Officer Stallings sending a text to a contact named "Bae" stating something to the effect that he was "going to jail."

8. In the course of the conversation, Officer Smerz noted that Ms. Dobson had a knife hanging out of her right front pants pocket and alerted Officer Starkey to its presence. Starkey then asked Ms. Dobson if there were any weapons in the car and Dobson stated there were not. He then reached in and recovered the knife.

9. Based on the totality of the circumstances, the officers then asked both Dobson and **WOODS** to step out of the car so that both persons could be pat frisked.

10. As **WOODS** came out of the car wearing only a T-shirt (despite the coolness of the weather), officers noted a sudden and marked change in his demeanor. **WOODS** stopped talking to the officers, hung his head as if upset, and lowered his shoulder and face as he began to pace and back away from the vehicle,

indicating to the officers that he was contemplating running. Both **WOODS** and Dobson were pat frisked. As noted, the knife seen by Officer Smerz was seized from Ms. Dobson.

11.  Officers then undertook to pat frisk the car. When Officer McCabe went to the rear passenger side seat, he immediately felt the outline of a gun inside a black North Face jacket that was immediately behind where **WOODS** had been sitting. Unlike **WOODS**, the officers were either wearing jackets (for those officers in uniform) or hooded sweatshirts and jeans (for those officers in plain clothes).

12.  While officers were frisking the car, Ms. Dobson asked if she could have her sweatshirt that was sitting on the driver's seat. When officers retrieved the sweatshirt for her, they noted that the only other jacket in the car was the black North Face jacket behind the front passenger seat in which the gun was found. In one pocket of the black North Face jacket, officers recovered what appeared to be older keys for a Honda and a receipt from the AutoZone in Dudley Square dated 9/28/18 at 11:15am.[1] Located in the other pocket of the jacket was a

---

[1] Video recovered from the AutoZone for the date and time of the receipt showed **WOODS** entering the AutoZone wearing a black North Face jacket that appeared to be identical to the jacket in which the gun was found and holding the area of his left jacket pocket. On the morning after the arrest, Ms. Dobson came into District B-2 and asked if she could pick up a Honda key for **WOODS'** girlfriend. As noted above, a Honda key was found in the same black North Face jacket in which the gun was found.

black cell phone with a locked screen that had an active text message that read, "put your lights on."

13. The firearm located by Officer McCabe was a Tanfoglio Model GT27 .25 caliber semi-automatic pistol that bore serial number 51057 ("the charged firearm") and contained 7 rounds of .25 caliber ammunition. After the charged firearm and the 7 rounds of ammunition recovered from it had been processed and placed into evidence, the firearm and ammunition were sent to the BPD Latent Print Unit. Criminalists at the Latent Print Unit were unable to recover any latent print material from the charged firearm or the ammunition it contained. The charged gun was thereafter sent to BPD Ballistics Unit where it was successfully test fired, and the 7 rounds it contained when seized were certified to be ammunition.

14. The charged firearm and ammunition were also examined by ATF S/A Mattheu Kelsch, who is trained to perform interstate commerce nexus examinations. S/A Kelsch examined the charged firearm and the 7 rounds of ammunition it contained when seized, determined they were a "firearm" and "ammunition" for purposes of federal law, and determined that both the firearm and all of the ammunition had been manufactured outside Massachusetts, meaning that the charged firearm and the 7 rounds of ammunition it contained had traveled across state lines or international

boundaries prior to being seized in Boston on September 29, 2018.

15.   I have reviewed **WOODS**'s criminal record as maintained by the Massachusetts Criminal History Systems Board.  It reveals, among other things, that **WOODS** was convicted in 2011 in Dorchester District Court on the charge of Assault with a Dangerous Weapon.  I have determined that that this is a crime punishable under Massachusetts law by imprisonment for more than one year.

16.   Based on the foregoing, I submit that there is probable cause to believe that, on or about September 29, 2018, **KEITH WOODS,** having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did possess, in and affecting commerce, a firearm and ammunition in violation of Title 18, United States Code, Section 922(g)(1).

_____
MICHAEL J. LINSKEY
TASK FORCE AGENT, ATF

Sworn and subscribed to before me this 26th day of November, 2018.

_____
DONALD L. CABELL
U.S. MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS